OF

## THE STATE OF IOWA,

AT

## DES MOINES, JANUARY TERM, A. D. 1892,

AND IN THE FORTY-SIXTH YEAR OF THE STATE.

---

SPERRY, WATT & GARVER, Appellees, v. CAIN & HYDE
et al., Appellants.

1. **Fraudulent Conveyances**: DECREE: REVIEW ON APPEAL. Where in an action involving the validity of several conveyances, made by an insolvent debtor to different persons, only one of such conveyances was found invalid, and from a decree to such effect the parties to said invalid conveyance alone appealed, the fact that all of said conveyances were contemporaneous, and based upon the same consideration, will not be considered by the supreme court as a ground for reversing the decree of the court below as to the conveyance in question.

2. ———: TRANSACTIONS BETWEEN RELATIVES: CONSIDERATION. Where a member of an insolvent firm conveyed certain real estate to his brother, and the only consideration claimed therefor was that it was made at the instance of the grantor's mother, to whom it was alleged that he was indebted, and that the mother was also indebted to said grantee, but the evidence as to the indebtedness of the grantor to the mother, and of the mother to the grantee, was weak and contradictory, *held*, that the conveyance was without consideration, and was, therefore, fraudulent as against the creditors of the grantor.

(203)

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

TUESDAY, JANUARY 19, 1892.

APRIL 13, 1888, the defendants Cain & Hyde were a co-partnership consisting of James Cain and Michael Hyde, and were indebted to the plaintiff in the sum of seven hundred and ninety-six dollars and thirty-eight cents upon their note, with the accumulated interest thereon from October 4, 1887. It appears that said firm was also indebted to Kinney and others. At this time the firm owned a store building, lot, and stock of merchandise in the town of Clare, where they had been carrying on the business of merchandising for several years. James Cain, one of the partners at the time above mentioned, owned in his own name an improved farm of eighty acres in Webster county, and his partner, Michael Hyde, also owned eighty acres of unimproved land and a small lot within the county. It is not disputed that at this time the firm of Cain & Hyde was insolvent, and it appears that on April 13 and 14, 1888, they conveyed all the real property owned by the firm to the defendant Kinney. At the same time one of the partners (Cain) conveyed all his individual real estate to the defendant, Johannah Hyde, and the other partner (Hyde) conveyed all his individual real estate to the defendant, Matthew Hyde. Johannah Hyde is the mother of the defendants, Michael and Matthew Hyde, and the mother-in-law of defendant, James Cain. The plaintiffs recovered a judgment in the Webster district court, May 15, 1888, against the firm and the individual members thereof, for eight hundred and five dollars and costs. The petition states that the conveyance in controversy was without consideration, and made for the purpose of hindering, delaying, and defrauding the plaintiffs, as creditors of said firm, and that the defendant, Michael Hyde, was at the time

insolvent, and that the defendant, Matthew Hyde, when he received said conveyance, knew it, and knew of said Michael's fraudulent intent, and accepted the conveyance for the purpose of aiding him in carrying said intent into execution. The answer generally and specifically denies the above allegations. The court below entered a decree setting aside the deed from Michael Hyde to Matthew, and subjecting the land to the payment of the plaintiff's claim. From this judgment part of the defendants appeal.—*Affirmed.*

*A. N. Botsford* and *Healy & Healy*, for appellants.

*Frank Farrell*, for appellees.

KINNE, J.—I. The appellants contend that, as the court below sustained the conveyance made by James Cain to Johannah Hyde, and the conveyance made by the firm of Cain & Hyde to the defendant, John Kinney, it should have made the same finding as to the conveyance from Michael Hyde to Matthew Hyde, because, as they claim, all the conveyances were contemporaneous, and based upon the same consideration. The only question before us relates to the validity of the conveyance by Michael Hyde to Matthew Hyde, and for the purposes of this appeal it alone will be considered. The fact that the court below found certain other conveyances to be based upon a valid consideration cannot be considered by us as a reason for a reversal of the judgment and decree rendered in relation to the conveyance now in question.

1. FRAUDULENT conveyances: decree: review on appeal.

II. It is contended by the appellants that the deed in controversy was given for a valuable consideration; that it was made at the instance of the mother, and to pay certain indebtedness claimed to be owing by Michael to Matthew, also to pay certain indebtedness from the mother

2. ——: transactions between relatives: consideration.

to Matthew arising out of the sale of eighty acres of land some time previous, the proceeds of which it is claimed were turned over to the mother. It is conceded that at the time of the conveyance from Michael Hyde to Matthew Hyde the firm of Cain & Hyde was insolvent, and it appears that neither Johannah Hyde nor Michael Hyde, were pressing the firm for the payment of any sum claimed to be due.

III. The defendant, Johannah Hyde, testifies in substance, in relation to why the conveyance was made to Matthew Hyde instead of to herself, that it was made to him because his place was sold, and he had a right to have something for it; that she told Mike to deed it to him for his share; and, when asked if she was to repay the money she had received of Matthew when he sold his land, she said she was not. Michael Hyde testifies in substance that he never received anything from Matthew for the land; that he wanted him to have this land in lieu of the land his father willed him. In a later deposition he says he conveyed it to Matthew for one thousand dollars, paid by him in the fall of 1887, in his mother's house, and that it was all paid by draft. Matthew Hyde testified that the deed was made to him so he would get his share; that he paid no money to Michael when the deed was made or at any other time, and expressly denies giving Michael any money in the fall of 1887. Examined at a later date, he says he did pay Michael one hundred dollars on the land, and then denies it on cross-examination. It is proper to say that Mrs. Hyde and all her children, except Mrs. Cain, had, since her husband's death in 1882, continued to live on the old home farm, and all their savings were turned over to the defendant, Johannah Hyde. In 1884, Matthew sold the eighty acres left him by his father to one Rial, and turned the money over to his mother. They were all then living together as one family. It does not appear that at this time either Matthew, his mother, or brother Michael expected that Michael

would ever deed his land to Matthew in lieu of the land Matthew had received under his father's will and sold to Rial. Indeed, Mrs. Hyde says that at the time of the sale to Rial there was no talk of Michael's making such transfer. The first conversation between the parties relative to Michael's making this deed was between Mrs. Hyde, Michael Cain, and the defendant Kinney about April 10, 1888. Furthermore, it is certain that Mrs. Hyde had never thought of having this land deeded to Matthew until the matter was first suggested to her by an attorney. Manifestly there was an entire absence of consideration for this conveyance, so far as it is based on the transfer of the land to Matthew, either in lieu of land he formerly owned or for a consideration paid by him. The testimony above referred to, and much more that might be quoted, shows that these parties are unable to agree in their statements as to why the land was deeded to Matthew; and Matthew and Michael, the parties to the deed, in their later examinations testify in conflict with their evidence first given on this subject.

IV. But it is insisted that there is evidence showing a consideration moving from Mrs. Hyde, which will support the conveyance. Mrs. Hyde claims she loaned her son Michael four hundred dollars some time after the firm began business. It also appears from the testimony that at about the time he received this money he left with his mother horses, cattle, and wagons amounting to more than four hundred dollars in value, and, between that time and the date of the execution of the deed to Matthew, she had the rents and profits of his eighty acres of land. It thus appears that Mrs. Hyde must have received from Michael far more than the four hundred dollars which she claimed she loaned him. But, aside from this, the evidence fails to satisfy us that Michael owed her the four hundred dollars when the conveyance was made. It is also claimed that Mrs. Hyde loaned Cain & Hyde two thousand

dollars about the time the firm commenced business. She testifies, however, as follows:

"*Q*. Cain's place was deeded to you? *A*. Yes, sir.

"*Q*. In payment of what they [the firm] were owing you, was it? *A*. Yes, sir.

"*Q*. Did you understand it at that time? *A*. I did.

"*Q*. Did you take the conveyance for that purpose? *A*. Yes, sir."

She also says that James Cain deeded his land to her to pay the indebtedness that the firm owed her; and again she says that she supposed at the time she met Cain in Mr. More's office, when he said he was owing her, and could not pay it all at that time, that he referred to what he (Cain) was owing her. She says Michael told her she would have to take the place (Cain farm) for her money, and that she did not know the value of the land. True it is she also says she paid Cain one thousand dollars for the land, but on further examination says: "He did not mention about a thousand dollars. I was to take it for my money. 'No particular sum was mentioned."

It seems to us from this and other testimony in the case that Mrs. Hyde intended to and did take the Cain farm for whatever the firm of Cain & Hyde owed her at the time the conveyance was made. This view is sustained by the testimony of Cain himself, who says:

"Well, I told her that we had not got any money to pay her, and had to give her the land for her account. * * * * I owned no other land at the time. When I met her I told her she would have to take the land for her money.

"*Q*. Now you say that Mrs. Hyde took your eighty acres of land in payment of her claim? *A*. Yes."

V. Mrs. Hyde had purchased goods of Cain & Hyde during the time they were in trade to the amount of nine hundred and forty-nine dollars and thirty-seven

cents. She claims she had loaned the firm one thousand dollars, which she was to trade out. To say the least, this arrangement was a most unusual proceeding. No credit was given Mrs. Hyde's account on the books of the firm at the time Mrs. Hyde claims to have paid them this one thousand dollars. If the testimony is to be believed, we must come to the conclusion that, while Mrs. Hyde had one thousand dollars credit with this firm, which she was to take out in goods, she was at the same time frequently purchasing goods of them, and paying cash therefor. Again, it appears that she never thought of having loaned this one thousand dollars when she was first examined in the case. She did not keep any account of the purchases she made, or their value, nor did she ever inquire of the firm as to how her account stood when they failed. After a patient investigation of this record, we reach the conclusion that the conveyance in question was without consideration, and fraudulent, and cannot be sustained.

The judgment of the district court is. AFFIRMED.